AO 106 (Rev. 04/10) Application for a Search Warrant

**SEALED**

**UNITED STATES DISTRICT COURT**

for the

District of Nebraska

FILED
US DISTRICT COURT
DISTRICT OF NEBRASKA

APR 1 2 2017

OFFICE OF THE CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

The residence and premises at 10044 "S" Plaza, Apt. #1,
Omaha, Nebraska
See Attachment B

)
)
)
)
)
)

Case No. 8:17MJ99

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
The residence and premises at 10044 "S" Plaza, Apt. #1, Omaha, Nebraska.
For further information, see Attachment B

located in the _____ District of _____ Nebraska _____ , there is now concealed *(identify the person or describe the property to be seized)*:
For further information, see Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, Sections 2251, 2252, 2252A | Child pornography: transportation, production, receipt & distribution, possession |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Dep. Mark Dishaw, Inv. DCSO/FBI Taskforce
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4-12-17

*Judge's signature*

City and state: Omaha, Nebraska

SUSAN M. BAZIS, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT B
## DESCRIPTION OF LOCATION TO BE SEARCHED

The location known as 10044 "S" Plaza, Apt #1, Omaha, NE is identified as follows:

10044 "S" Plaza is one of several apartment complex buildings that collectively make up a community known as the Fairway Apartments. The building labeled, 10044 "S" Plaza, is a two story complex containing four apartments and a laundry room. Two apartments and the laundry room are on the main floor while an additional two apartments are on the second floor. A gray entry door with the number "1" affixed to it was observed on the main floor. The apartment complex building has tan colored siding with brown trim.









## ATTACHMENT A
## LIST OF ITEMS TO BE SEIZED AND SEARCHED

1.     All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the receipt or storage of the same, including but not limited to:

Any computer, computer system and related peripherals, including data processing devices and software (including but not limited to central processing units; internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, routers, computer compact disks, CD-ROMS, DVD, usb storage devices and flash memory storage devices, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printer, video display monitors, scanners, digital cameras, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

2.     Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

3.     Any and all documents, records, emails, and internet history (in documentary or electronic form) pertaining to the possession, receipt or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, or pertaining to an interest in child pornography whether transmitted or received.

4. Any and all records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, as well as any and all records relating to the ownership or use of computer equipment found in the residence.

5. Documents and records regarding the ownership and/or possession of the searched premises.

6. During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.

13

## AFFIDAVIT OF DEPUTY MARK DISHAW

I, Deputy Mark Dishaw, S-372, having been first duly sworn, do hereby depose and state as follows:

1.      I am a Deputy Sheriff with the Douglas County Sheriff's Office. I have been a Deputy Sheriff since June, 2002. I am currently assigned to the Federal Bureau of Investigation (FBI) Child Exploitation Task Force (CETF) as a Federally Deputized Task Force Officer (TFO) in Omaha Nebraska. Since October, 2009, I have been assigned to investigate computer and high technology crimes, to include child pornography investigations.

2.      I am a Deputy Sheriff with over fourteen (14) years of experience in law enforcement with the Douglas County Sheriff's Office. I have over 200 hours of training in Computer Forensics and obtained my Certified Forensic Computer Examiner certification in March, 2010. I also have attended training through the National White Collar Crime Institute, Guidance Software, Sumuri, Internet Crimes Against Children (ICAC), and the U.S. Secret Service. I have attended approximately 35 hours of training for Peer-2-Peer/Child Pornography investigations. I have a Bachelor's Degree in Psychology from Creighton University. I have been assigned to Computer / Internet / Technical crimes since May of 2009. I have participated in at least thirty (30) Peer-2-Peer investigations and at least one hundred (100) child pornography investigations.

3.      I make this affidavit in support of an application for a warrant to search the residence located at 10044 "S" Plaza, Apartment #1, Omaha, Douglas

1

County, Nebraska 68127 which is more fully described in **Attachment B** of this affidavit.

4. The statements contained in this affidavit are based upon my investigation, information provided by other law enforcement officers, other personnel specially trained in the seizure and analysis of computers and electronic media, and on my experience and training as a Deputy Sheriff in the Douglas County Sheriff's Office. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of a violation of Title 18, United States Code, Sections 2251, 2252, and 2252A exists at the residence.

## I. COMPUTERS AND CHILD PORNOGRAPHY

5. I have assisted and participated in investigations of persons suspected of violating federal child pornography laws, including Title 18, United States Code, Sections 2251, 2252 and 2252A. Investigators involved in this investigation have participated in various training hosted by the National Center for Missing and Exploited Children (NCMEC), Internet Crimes Against Children (ICAC) Task Force training group, Federal Bureau of Investigations (FBI), and other law enforcement groups who addressed specific child pornography laws in which computers are used as the means for receiving, transmitting, manufacturing, and storing child pornography. Child pornography is defined in Title 18, United States Code, Section 2256.

2

6.    Computers and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). There were definable costs involved with the production of pornographic images. To distribute these images on any scale required significant resources. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls.

7.    The development of computers has changed this; computers serve five functions in connection with child pornography: production, communication, distribution, storage, and viewing.

8.    Child pornographers can now transfer photographs from a camera onto a computer-readable format with a device known as a scanner. With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world.

9.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store hundreds of thousands of images at very high resolution.

10.    The Internet and its World Wide Web protocol afford collectors of

3

child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

11.     Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as applications service providers (Yahoo, MSN, Google) and Peer2Peer (Shareaza, Bearshare, Gnutella) groups among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in a variety of formats. Programs also provide a similar nexus to share their files to millions of subscribers. Users can also set up online storage accounts from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer.

12.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or Internet Service Provider client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner can often recover evidence which shows that

4

a computer contains peer to peer software or other software used to obtain files of interest, when the computer was sharing files, and even some of the files which were uploaded or downloaded. Such information may be maintained indefinitely until overwritten by other data.

13. A file transfer, upload, or download is assisted by reference to an Internet Protocol (IP) address. This address, expressed as four numbers separated by decimal points, is unique to a particular internet connection during an online session. The IP address provides a unique location making it possible for data to be transferred between computers.

## II. SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

14. Searches and seizures of evidence from computers commonly require investigators to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, computer related documentation, and peripherals) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto optical, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order and with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this

5

kind of data search on site; and

    b.  Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

## III. SEARCH METHODOLOGY TO BE EMPLOYED

    15.  The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    a.  examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

    b.  searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have

6

determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

    c.    surveying various file directories and the individual files they contain;

    d.    opening files in order to determine their contents;

    e.    scanning storage areas;

    f.    performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in **Attachment A**; and/or

    g.    performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in **Attachment A.**

## IV. DETAILS OF THE INVESTIGATION

16. On March 13, 2017, Your Affiant received a copy of National Center for Missing & Exploited Children (NCMEC) CyberTip report #: 16823774 for review related to a child pornography investigation in violation of Title 18, United States Code, Sections 2251, 2252, and 2252A.

17. On January 23, 2017, NCMEC received information from America Online (AOL) Inc. that a user of their services had uploaded/emailed an image depicting child exploitation to another individual. The user/person being reported was listed as roman.carr@aol.com.

18. The file information/email thread with attachment was provided as 84300-email-1-20161226013243.eml. A copy of the email was provided with the NCMEC report for review. Your Affiant observed that the conversation was in response to an ad posted on

7

Craigslist listed as "Looking for taboo... - m4m". The original Craigslist post was identified as being located at the following web address:

http://omaha.craigslist.org/cas/5927731388.html. The users appeared to be using Craigslist for the correspondence; however, one of the user's real email address was identified as a Yahoo account while the other user's email was an AOL account. The Yahoo email address was revealed as cervezadude55@yahoo.com. The email responses from the Yahoo! email address had a signature stating, " Sent from Yahoo Mail on Android", suggesting the user is using a mobile Android device.

19. The email thread provided in the NCMEC report was dated as having occurred between December 25-26, 2016. During the conversation, the user of the Yahoo email replied to the Craigslist post referencing young taboo is so hot and to let them know if would like to chat. The AOL user then relayed they would love to chat, noting he loves little girls and has "vids n pics and a niece that I play with", noting she is 5. The Yahoo user responded that his "cock" is hard and was in the bathroom "rubbing" to the last pic. He noted he is 50 and in good shape, discrete, and the younger the better. The communication continued in a sexual manner, including the AOL user stating he wanted the Yahoo user to come over and "fuck her", referring to his niece whom he called Kate. He stated he would let him "stick it in her bottom but we have to stay out of her little twat. You can rub on her clit but no sticking it in. Please think about it and let me know."

20. According to the NCMEC report, the email containing the illegal image was sent by the user of AOL to the user of Yahoo! on December 26, 2016 at 18:32:00 UTC. Your Affiant confirmed this by reviewing the email header of the actual email.

8

21. Your Affiant reviewed the image with file name, LC-5434-1.jpg, that was attached to the email between the two users. The picture depicted a semi-nude, prepubescent female whose face is not seen in the image. The female is observed leaning backwards or lying down on a multi-colored bed sheet while wearing a turquoise/white striped long sleeve shirt. She is nude from the waist down with her vagina exposed in the direction of the camera. Your Affiant observed what appeared to be semen dripping from her vagina. Based on physical features of the female and Your Affiant's experience of viewing thousands of similar images, the girl appeared to be approximately 2-4 years old.

19. An IP address captured by AOL at the time the user sent the illegal image via email from their account was identified as 70.59.167.208.Your Affiant determined the IP address was being provided by CenturyLink at the time.

20. On March 22, 2017, Your Affiant submitted a signed Douglas County Attorney subpoena to CenturyLink requesting basic subscriber information for IP address 70.59.167.208. On April 4, 2017, CenturyLink provided Your Affiant with a response to the subpoena indicating the susbcriber is Jon CARR with an address of 10044 S Plz 1, Omaha, NE, Unit 1 and a billing address of Jon CARR, 10044 S Plz, Apt 1, Omaha, NE 68127.

21. Nebraska State Patrol Internet Crimes Against Children Analyst Jessica Bowder completed a report reiterating the information from the NCMEC report and additional research she conducted in an effort to identify the user of the AOL email account and the Yahoo! email account.

22. Bowder searched the AOL email account, roman.carr@aol.com, in various social media outlets, but did not locate a profile for the person. She also searched the name of

9

Roman CARR within the Nebraska Criminal Justice Information System (NCJIS) and other resources, but did not locate a person with that name. BOWDER searched the email address, cervezadude55@yahoo.com in social media platforms and did not find any profiles associated with the email address.

23. BOWDER submitted a sanitized image to NCMEC's Child Victim Identification Program (CVIP) for possible child identification. NCMEC reported that they are familiar with the image and the victim depicted in the file was identified by law enforcement in a past investigation. The image is from a series known as "UncleM".

24. Based on Your Affiant's review of the file and NCMEC's confirmation that child in picture is an identified minor victim, the file was confirmed to be child pornography as defined in Title 18, United States Code, Section 2256.

25. Taken together, the above information indicates that on or before December 26, 2016, a person knowingly was in possession of child pornography in interstate and foreign commerce by means of a computer.

26. On April 6, 2017, Your Affiant contacted Omaha Public Power District (OPPD) and confirmed the utilities are in the name of Jon C. CARR. Your Affiant was informed the utilities are still active as of this date.

27. Your Affiant conducted a search within the Nebraska Criminal Justice Information System and located a Nebraska driver's license in the name of Jon C. CARR, described as a white male with a date of birth of December 24, 1971. The license, issued on December 12, 2014, listed an address of 4937 S. 98th Avenue Circle, Omaha, NE 68127.

28. Your Affiant identified a red, 2003 Dodge Durango with Nebraska license plate

10

UAK 255 registered to Jon CARR at 10044 S Plaza, Apt. #1, Omaha, NE 68127 as of

November 21, 2016. NCJIS vehicle records also indicated provided title information, which

listed an address of 4937 S. 98th Ave. Cir., Omaha, NE 68127. This address matched Jon

CARR's driver's license address. Insurance information provided by NCJIS for the vehicle

was listed in the name of Nicolette CARR.

29. NCJIS records indicated earned wages were from Pacific Life Insurance Company

through the 3rd quarter of 2016. On April 6, 2017, Your Affiant observed CARR's red Dodge

Durango in the Pacific Life employee parking garage near 68th & Mercy Road, Omaha, NE.

30. On April 6, 2017, Your Affiant went to the apartment complex, collectively

known as the Fairway Apartments, and located a red security door with a glass window

directly to the right of the door that had white letters/numbers affixed to it labeled, 10044 "S"

Plaza. The door led into a hallway consisting of four apartments and a laundry room. Two

apartments and the laundry room were on the main floor and two additional units were on a

second level. Your Affiant observed a gray door with the number "1" on the main floor. No

names or other identifiers were on the door or the cluster mailbox located in the hallway.

31. On April 7, 2017, Your Affiant observed CARR's red Dodge Durango parked in

front of the building listed as 10044 "S" Plaza.

## V. CONCLUSION

32. Based upon the above information, I believe that probable cause exists to believe

there has been a violation of Title 18, United States Code, Section 2251, 2252, and 2252A,

which prohibits possession, advertising, promoting, presenting, distributing, or soliciting

through interstate or foreign commerce by any means, child pornography, and that evidence

11

of those violations exist and are concealed on the premises known as 10044 "S" Plaza, Apt #1, Omaha, Douglas County, Nebraska which is more fully described in **Attachment B** to this affidavit.

33. In consideration of the foregoing, I respectfully request that this court issue a day time search warrant for the premises known as 10044 "S" Plaza, Apt #1, Omaha, NE authorizing the search of the aforementioned premises for the items described in **Attachment A** and the seizure of such items for the purpose of searching and analyzing them.

34. Your Affiant is aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process. For this reason, the "return" inventory will contain a list of only the tangible items recovered from the premises. Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

Investigator Mark Dishaw, S-372
Deputy Sheriff
Douglas County Sheriff's Office

Sworn to me this ⌊2 day of April, 2017.

SUSAN M. BAZIS
United States Magistrate Judge

12

AO 93 (Rev. 11/13) Search and Seizure Warrant

**SEALED**

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   8:17MJ99

The residence and premises at 10044 "S" Plaza, Apt. #1 )
Omaha, Nebraska )
See Attachment B )

**COPY**

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ District of _____ Nebraska
*(identify the person or describe the property to be searched and give its location)*:

The residence and premises at 10044 "S" Plaza, Apt. #1 Omaha, Nebraska.

For further information, see Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment A for additional details.

**YOU ARE COMMANDED** to execute this warrant on or before   4-20-17   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____ SUSAN M. BAZIS _____.

*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   4-12-17 at 2:48pm   _____
                                                                      *Judge's signature*

City and state:   Omaha, Nebraska   SUSAN M. BAZIS, U.S. Magistrate Judge
                                                              *Printed name and title*



AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>8:17MJ99 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT B
## DESCRIPTION OF LOCATION TO BE SEARCHED

The location known as 10044 "S" Plaza, Apt #1, Omaha, NE is identified as follows:

10044 "S" Plaza is one of several apartment complex buildings that collectively make up a community known as the Fairway Apartments. The building labeled, 10044 "S" Plaza, is a two story complex containing four apartments and a laundry room. Two apartments and the laundry room are on the main floor while an additional two apartments are on the second floor. A gray entry door with the number "1" affixed to it was observed on the main floor. The apartment complex building has tan colored siding with brown trim.









15

## ATTACHMENT A
## LIST OF ITEMS TO BE SEIZED AND SEARCHED

1.      All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the receipt or storage of the same, including but not limited to:

Any computer, computer system and related peripherals, including data processing devices and software (including but not limited to central processing units; internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, routers, computer compact disks, CD-ROMS, DVD, usb storage devices and flash memory storage devices, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printer, video display monitors, scanners, digital cameras, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

2.      Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

3.      Any and all documents, records, emails, and internet history (in documentary or electronic form) pertaining to the possession, receipt or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, or pertaining to an interest in child pornography whether transmitted or received.

4. Any and all records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, as well as any and all records relating to the ownership or use of computer equipment found in the residence.

5. Documents and records regarding the ownership and/or possession of the searched premises.

6. During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.

13